IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
WAYCROSS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| | CASE NO.: 5:19-cr-9 |
| v. | |
| ISAIAH HICKS, | |
| Defendant. | |

**ORDER AND MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Defendant Isaiah Hicks ("Mr. Hicks") has been indicted on Possession of a Firearm by a Prohibited Person, 18.U.S.C. § 922(g)(1).  Before the Court are ten discovery motions by Mr. Hicks, docs. 49, 50, 51, 52, 53, 54, 56, 57, and 58.  Mr. Hicks has also filed a Motion to Determine Voluntariness of Statements under Jackson v. Denno, 378 U.S. 368 (1964), doc. 55.

The Court held a motions hearing on August 26, 2019.  Doc. 124.  During the hearing, the parties informed the Court that, as of the date of the hearing, all discovery issues had been resolved.  Accordingly, the Court **DENIES as moot** Mr. Hicks's discovery motions, docs. 49, 50, 51, 52, 53, 54, 56, 57, and 58.  Additionally, at the hearing, the undersigned considered evidence and argument related tom Mr. Hicks's Motion to Determine Voluntariness of Statements.  Doc. 55.  At the hearing, I found that Mr. Hicks's statements were voluntarily made and were not the product of any coercion or undue pressure, and I set forth my reasons for reaching that conclusion on the record.  This Report and Recommendation memorializes the conclusions and reasons set forth at the August 26, 2019 hearing.  For the reasons stated at the August 26, 2019 hearing, and restated below, I **RECOMMEND** that the Court **GRANT** Motion to Determine Voluntariness of Statements and find that Mr. Hicks's statements were voluntary.

**DISCUSSION**

**I.     Mr. Hicks's Statements**

The grand jury indicted Mr. Hicks for the offense of Possession of a Firearm by a Prohibited Person, 18.U.S.C. § 922(g)(1).  Doc. 1.  On or about Mr. Hicks was arrested and interrogated on June 16, 2018.  Investigator Ray Boyles of the Wayne County Police Department interrogated Mr. Hicks at the Wayne County Jail for approximately 40 minutes, between roughly 10:49 p.m. and 11:30 p.m.  The interrogation included questions about Mr. Hicks's involvement in a shooting at the Briarwood Apartment Complex located in Jesup, Georgia.  Mr. Hicks filed a motion in accordance with Jackson v. Denno, 378 U.S. 368 (1964), asking the Court to determine the voluntariness of the statements he made during the June 16, 208 interrogation (the "Motion").  Doc. 55.

The Court held a hearing on Defendant's Motion on August 26, 2019.  Doc. 123.  At the hearing, counsel for Defendant played video footage of the June 16, 2018 interrogation.  The video footage was taken from the interrogating officer's body camera.  Defendant's counsel played all material parts of the interrogation video for the Court.  No party disputes the video's accuracy or completeness.  Defendant's counsel also tendered two documentary exhibits at the August 26, 2019 hearing: (1) an Arrest/Booking Report that was prepared, at least in part, during the June 16, 2018 interrogation; and (2) a Miranda Waiver that was completed during the June 16, 2018 interrogation.  Doc. 122.

The June 16, 2018 interrogation occurred at the Wayne County, Georgia Sheriff's office in Jesup, Georgia.  The video footage shows the interrogation took place in what appears to be a small room with a table and three chairs.  At the start of the video, Mr. Hicks is seated across the table from Investigator Ray Boyles and another officer in the interrogation room.  Investigator

Boyles reads Mr. Hicks his rights pursuant to Miranda v. Arizona, 384 U.S. 436 (1966). Officer Boyles takes the time to explain Mr. Hicks's rights and reiterates a few aspects of the rights in a more plain speak, informal manner. On the video, Mr. Hicks executes a waiver acknowledging that he is aware of those rights. Investigator Boyles then proceeds to question Mr. Hicks about various topics, including his participation in the purported shooting at the Briarwood Apartment Complex, how he was affiliated with Codefendants, and who he knows at the Briarwood Apartment Complex. Aside from a few technical pauses in the video, the questioning continues for approximately 40 minutes.

## II.     Legal Standard

The United States Supreme Court's holding in Jackson v. Denno, 378 U.S. 368 (1964), governs the voluntariness of confessions and, in pertinent part, provides:

> It is now axiomatic that a defendant in a criminal case is deprived of due process of law if his conviction is founded, in whole or in part, upon an involuntary confession, without regard for the truth or falsity of the confession, and even though there is ample evidence aside from the confession to support the conviction.

378 U.S. at 376 (internal citation omitted). A confession is not voluntary pursuant to the Due Process Clause when law enforcement officials have used coercive conduct. Colorado v. Connelly, 479 U.S. 157, 167 (1986). Coercion can be mental or physical. Blackburn v. Alabama, 361 U.S. 199, 206 (1960); Chambers v. Florida, 309 U.S. 227, 237 (1940). The test for determining if a confession is the result of coercion requires a review of the totality of the circumstances. Blackburn, 361 U.S. at 206 (citing Fikes v. Alabama, 352 U.S. 191, 197 (1957)). In examining the totality of the circumstances, it must be determined whether "the statement is the product of the accused's free and rational choice." Harris v. Dugger, 874 F.2d 756, 761 (11th Cir. 1989). These potential circumstances include not only the crucial element

of police coercion, but the length of the interrogation, its location, and its continuity, and the defendant's maturity, education, physical condition, and mental health.  These circumstances also include the failure of police to advise the defendant of his rights to remain silent and to have counsel present during custodial interrogation.  Withrow v. Williams, 507 U.S. 680, 693–94 (1993) (internal citations omitted).  "Sufficiently coercive conduct normally involves subjecting the accused to an exhaustingly long interrogation, the application of physical force or the threat to do so, or the making of a promise that induces a confession."  United States v. Thompson, 422 F.3d 1285, 1295–96 (11th Cir. 2005).  Government coercion is a necessary predicate to a finding of involuntariness under the Fifth Amendment.  However, "[a]bsent police conduct causally related to the confession, there is no basis for concluding that any state actor has deprived a criminal defendant of due process of law."  Id. at 1296.

### III.   Mr. Hicks's Statements were Voluntary

Considering the testimony and argument presented at the August 26, 2019 hearing, as well as the video footage of Mr. Hicks's June 16, 2018 interrogation, I find that Mr. Hicks's statements were voluntarily made.  Several facts support this conclusion.

Based on Mr. Hicks's appearance at the August 26, 2019 hearing and in the video footage of the June 16, 2018 interrogation, he appears at all relevant times to be in relatively good physical health and does not demonstrate any mental infirmity or diminished mental capacity. From the video footage of the interrogation, it is clear that Mr. Hicks had no difficulty understanding or speaking the English language.  During the interrogation, Mr. Hicks was expressive, articulate, and fully able to understand and discuss difficult or complex concepts.

At the outset of the June 16, 2018 interrogation, Mr. Hicks was notified of his rights and executed a waiver acknowledging that he is aware of those rights.  The notice and waiver

occurred reasonably soon after Mr. Hicks's arrest.   Mr. Hicks was informed that he could stop talking and end the interrogation at any time, and Mr. Hicks acknowledged this instruction.   Mr. Hicks was interrogated by no more than two officers at a time for approximately 40 minutes.   The interrogation was not exhaustingly long.   Moreover, Mr. Hicks was alert, responsive, coherent, and attentive throughout the interrogation.   The interrogating officer never promised him more lenient treatment in response for any cooperation.   During the interrogation, Officer Boyles emphasized the seriousness of the situation and the possibility of criminal charges, but the information is not conveyed in a threatening or coercive manner.   Overall, the tone throughout the interrogation was profession and conversational.   The video footage demonstrates that the law enforcement officer did not speak to Mr. Hicks in loud or raised voices at any time.   Quite the opposite.   Officer Boyles was direct by calm and metered in his questions.   While the location and circumstances of the interview were likely intimidating to Mr. Hicks, the location and circumstances were not unusual or threatening, and certainly were not coercive in any way that would render Mr. Hicks's statements involuntary.

Furthermore, the video footage does not contain any indication that Mr. Hicks was physically threatened or restrained at any time during the interrogation.   Again, the video footage shows the opposite—Officer Boyles and the other interrogating officer's kept ample distance (and a table) between themselves and Mr. Hicks.   At the end of the interrogation, Officer Boyles even asks Mr. Hicks permission to shake his hand, and Mr. Hicks agreed.   Furthermore, the footage does not show that Mr. Hicks ever requested counsel, a telephone call, a break in questioning, food, or water.   The footage does not reflect that Mr. Hicks was in any distress during the interrogation, and, in fact, he appears calm and comfortable throughout the interrogation.   Although Mr. Hicks briefly states that he is cold, at no point during the

interrogation did Mr. Hicks express that he was in any physical discomfort or demonstrate any physical manifestation of discomfort.

In sum, the evidence demonstrates that Mr. Hicks willingly and voluntarily communicated with the interrogating law enforcement officers at all times during the interrogation, and there is no indication that any of Mr. Hicks's statements during the interrogation were the product of coercion or undue influence.

Accordingly, I **RECOMMEND** the Court **GRANT** Mr. Hicks's Motion to Determine Voluntariness of Statements, doc. 55, and find that Mr. Hicks's statements made during the June 16, 2018 interrogation were voluntary.

## CONCLUSION

Based on the foregoing reasons, the Court **DENIES as moot** Mr. Hicks's discovery motions, docs. 49, 50, 51, 52, 53, 54, 56, 57, and 58.   I **RECOMMEND** the Court **GRANT** Mr. Hicks's Motion to Determine Voluntariness of Statements, doc. 55, and find that Mr. Hicks's statements during the June 16, 2018 interrogation were voluntary.

The Court **ORDERS** any party seeking to object to this Report and Recommendation to file specific written objections within 7 days of the date on which this Report and Recommendation is entered.   Any objections asserting that the Magistrate Judge failed to address any contention raised in the Complaint must also be included.   Failure to do so will bar any later challenge or review of the factual findings or legal conclusions of the Magistrate Judge. See 28 U.S.C. § 636(b)(1)(C); Thomas v. Arn, 474 U.S. 140 (1985).   A copy of the objections must be served upon all other parties to the action.

Upon receipt of Objections meeting the specificity requirement set out above, a United States District Judge will make a *de novo* determination of those portions of the report, proposed

findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge. Objections not meeting the specificity requirement set out above will not be considered by a District Judge. A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit. Appeals may be made only from a final judgment entered by or at the direction of a District Judge.

**SO ORDERED** and **REPORTED and RECOMMENDED**, this 9th day of September, 2019.

_____
BENJAMIN W. CHEESBRO
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA